**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

ACRISURE, LLC and
SWDS HOLDINGS, INC.,

              Plaintiffs,

v.

JOHN JACOBI,

              Defendant.

Case No. 1:26-cv-1917

Hon.

---

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

---

Plaintiffs Acrisure, LLC and SWDS Holdings, Inc. (collectively "Acrisure"), by and through their attorneys Skadden, Arps, Slate, Meagher & Flom LLP and Warner Norcross + Judd LLP, state their Complaint for Injunctive and Declaratory Relief against Defendant John Jacobi ("Jacobi"), upon personal knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters, as follows:

### NATURE OF ACTION

1.      Earlier today, on June 23, 2026, in a coordinated attack, Acrisure's then-employee John Jacobi resigned from Acrisure with no notice to join Edgewood Partners Insurance Center ("EPIC"), one of Acrisure's competitors.

2.      Jacobi was a highly compensated professional at Acrisure earning more than $1 million per year in 2025.  Jacobi joined Acrisure after Acrisure acquired an entity in which Jacobi had an ownership interest, SWDS Holdings, Inc. ("SWDS").  Acrisure purchased SWDS for millions of dollars in consideration, pursuant to a Stock Purchase Agreement, effective November 18, 2019 (the "Stock Purchase Agreement").

3.      Simultaneously with the acquisition, Jacobi executed an employment agreement also dated November 18, 2019 (the "Employment Agreement") that contained reasonable customer and employee non-solicitation covenants.  Jacobi was represented by counsel in connection with entering into both agreements.

4.      Jacobi now seeks to repudiate the Employment Agreement, including most notably the choice of law and forum selection clauses that designate Michigan as the exclusive forum for this dispute.

5.      Jacobi resigned from Acrisure this morning at 9:03 AM Pacific.  By 9:04 AM Pacific, three other individuals who worked with Jacobi at Acrisure also resigned to join EPIC within minutes of each other.

6.      Within the hour, by 9:25 AM Pacific, Jacobi's legal counsel continued executing on the plan to raid Acrisure and hand delivered a letter to Acrisure's Michigan counsel stating that Jacobi "elects to void his Employment Agreement" and demanding that Acrisure agree that it would "refrain from any attempts to force" Jacobi to litigate his claims in Michigan, as Jacobi agreed to in the Employment Agreement.  Jacobi's lawyers demanded a response by no later than the close of business that same day (today).

7.      By 9:52 AM Pacific, Jacobi and his new employer, EPIC, filed a 88-paragraph complaint in the U.S. District Court for the Central District of California against Acrisure and a number of related entities seeking to invalidate the restrictive covenants in his Employment Agreement.  *See John Jacobi et al. v. Acrisure Partner Group*, *LLC et al.*, No. 8:26-cv-01611, ECF No. 1 (C.D. Cal. filed June 23, 2026) (the "California Action").  In the California Action, Jacobi asserts four counts against Acrisure, each challenging the enforceability of the Employment Agreement.  (*Id.*)

8.    By 11:36 AM Pacific, an additional individual had resigned from Acrisure to join EPIC.

9.    At 1:00 PM Pacific, EPIC announced the completion of its raid.  In a detailed release reflecting quotes from multiple individuals, EPIC said that it had hired Jacobi and the other Acrisure individuals to add "dedicated F&I expertise" to EPIC's offerings.  Jacobi was hired to be Epic's Chief Growth Officer for F&I.

10.    Through this action seeking injunctive relief and declaratory judgment, Acrisure seeks to enforce its rights pursuant to the Employment Agreement and to enjoin Jacobi from violating the reasonable restrictive covenants agreed upon in the Employment Agreement.  Upon information and belief, Jacobi violated the employee non-solicitation provision of the Employment Agreement in connection with their hiring.  Upon information and belief, Jacobi has violated or will violate the customer non-solicitation provision of the Employment Agreement in connection with the solicitation of customers to persuade them to move their business to EPIC.

11.    Acrisure has suffered, and will continue to suffer, irreparable harm as a result of Jacobi's unlawful conduct.

**PARTIES**

12.    Plaintiff Acrisure, LLC is a Michigan limited liability company and its sole member is Acrisure Intermediate, Inc.  Acrisure Intermediate, Inc. is a Delaware corporation with its principal place of business in Michigan.  Acrisure, LLC is a citizen of Delaware and Michigan.

13.    Plaintiff SWDS Holdings, Inc. is a Delaware corporation with its principal place of business in Michigan.  SWDS Holdings, Inc. is a citizen of Delaware and Michigan.

14.    Defendant John Jacobi is an individual who upon information and belief is a citizen of California.  Jacobi was a Senior Vice President at Acrisure until he resigned without notice effective immediately earlier today, June 23, 2026, to join a competitor of Acrisure.

## JURISDICTION AND VENUE

15.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Jacobi is a citizen of California.  Acrisure, LLC and SWDS Holdings, Inc. are citizens of Michigan and Delaware.

16.    This Court has personal jurisdiction over Jacobi because Jacobi consented to personal jurisdiction in this Court in Section 17(d) of the Employment Agreement.  In addition, Jacobi's intentional acts at issue in this Complaint were intentionally aimed at Michigan and caused injury to Acrisure in Michigan.  Jacobi has sufficient minimum contacts with Michigan and otherwise purposefully availed himself of the benefits in this State in conducting his business, thereby rendering the exercise of jurisdiction by Michigan courts permissible under traditional notions of fair play and substantial justice.

17.    Venue in this district is proper pursuant to 28 U.S.C. § 1391.  Venue in this district is also proper because Jacobi agreed in Section 17(d) of the Employment Agreement that any action arising from or related to the Employment Agreement seeking injunctive or equitable relief would be brought exclusively in either a state court located in Kent County, Michigan or a federal district court in the Western District of Michigan.

18.    In Section 17(d) of the Employment Agreement, Jacobi agreed that the Employment Agreement "shall be governed, construed, interpreted, and enforced in accordance with the domestic laws of the State of Michigan, without giving effect to any choice or law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that

4

would cause the application of the laws of any other jurisdiction other than the State of Michigan." Jacobi further agreed in Section 17(d) that "[a]ll actions or proceedings arising from or related to this Agreement and for which a party seeks injunctive or equitable relief shall be brought only in a state court of competent subject matter jurisdiction in Kent County, Michigan, or in the federal courts of competent subject matter jurisdiction in the Western District of Michigan, Southern Division. Each party expressly and irrevocably consents to personal jurisdiction and venue in such courts, and agrees not to object to such jurisdiction or venue on the ground of forum non conveniens or otherwise."

## FACTUAL BACKGROUND

### Acrisure Is A Global Fintech Leader
### Providing Financial Services In The Insurance Brokerage Industry

19. Acrisure is a global fintech leader based in Grand Rapids, Michigan, that provides intelligence-driven financial services solutions across many industries, including the insurance brokerage industry. Acrisure has offices throughout the United States.

20. The insurance brokerage industry is highly competitive to soliciting and maintaining customers, accounts, and employees.

21. Acrisure spends significant time and money developing an experienced and leading team of insurance brokerage professionals who help Acrisure's customers to address their unique needs and further their business relationship with Acrisure.

22. Acrisure makes significant investments to acquire, build, and retain its customer base and customer relationships, its goodwill, business reputation and brand, and its employee workforce.

23.     Acrisure invests in innovative technology, training of its workforce, strong referral networks, and business contacts that are critical to developing and retaining its insurance customer relationships.

24.     Acrisure protects its business relationships by obtaining from employees who have particularly important roles agreements with reasonable restrictions in the form of non-competition and non-solicitation provisions, among others.

**In 2019, Acrisure Purchased An Insurance
Brokerage In Which Jacobi Had An Ownership Interest And Simultaneously
<u>Jacobi Entered Into An Employment Agreement As A Condition To The Deal</u>**

25.     In November 2019, Acrisure purchased SWDS, including all of its business, assets, and goodwill, in which Jacobi had an ownership interest, for millions in consideration. Jacobi received more than $1 million in cash and equity as part of the transaction.

26.     As part of Acrisure's purchase of SWDS, in November 2019, the parties to that transaction entered into the Stock Purchase Agreement.

27.     Jacobi's execution of the Employment Agreement was a condition to the closing of Acrisure's purchase of SWDS and an inducement to Acrisure consummating the transaction.

28.     The Employment Agreement was an exhibit to and closing deliverable of the Stock Purchase Agreement.

29.     The Stock Purchase Agreement and Employment Agreement were negotiated by legal counsel for the parties, including legal counsel for Jacobi from the law firm Bryan Cave Leighton Paisner LLP.

30.     In the Employment Agreement, Jacobi acknowledged that SWDS and Jacobi had "mutually prepared this Agreement through the process of negotiation and the involvement, to the extent desired, of independent counsel."  (Employment Agreement § 17(h).)

6

31.     As a condition of closing on the purchase of SWDS, Jacobi agreed to restrictive covenants in the Stock Purchase Agreement itself and in additional agreements that were executed as a condition of closing, including the Employment Agreement.

32.     The Employment Agreement expressly references the Stock Purchase Agreement.

33.     Jacobi's agreement to the covenants contained in Section 12(b) of the Employment Agreement was a condition to closing under the Stock Purchase Agreement.

34.     Section 12 of the Employment Agreement contains covenants of non-solicitation, defined below as Business Non-Solicitation Covenants and the Employee Non-Solicitation Covenant.

35.     Pursuant to Section 12(b) of the Employment Agreement, Jacobi acknowledged that he agreed to the Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant "[i]n consideration of, and as a condition and inducement to Employer's purchase of the outstanding equity interests of [SWDS]."  (Employment Agreement § 12(b).)

36.     References to Employer in the Employment Agreement "shall be deemed to apply to Employer, Acrisure[, LLC] and their respective Affiliates."  (Employment Agreement § 12(d).)

**Jacobi Agreed To Reasonable Restrictive Covenants In The Employment Agreement**

37.     At Acrisure, Jacobi was responsible for, among other things, managing, soliciting, and selling customers various insurance products and services, providing related services to and developing goodwill with customers.  Jacobi had access to, and made use of, Acrisure's proprietary and confidential information.

38.     Jacobi was highly compensated by Acrisure, receiving annual compensation of more than $1 million at the time of his abrupt resignation.

7

39.    Acrisure hired and highly compensated Jacobi in exchange for, among other things, Jacobi's agreement to reasonable restrictive covenants in the Employment Agreement.

40.    In Section 8(a)(i) of the Employment Agreement, Jacobi agreed to provide "at least forty-five (45) days' prior written notice" in order to terminate his employment. (Employment Agreement § 8(a)(i)) (the "Notice Provision").

41.    Jacobi agreed in the Employment Agreement to customer non-solicitation covenants.  Specifically, Jacobi agreed:

(a)    in Section 12(b)(ii) of the Employment Agreement that for the three-consecutive-year period after his termination, Jacobi would not, directly or indirectly, other than on behalf of Acrisure or its affiliates, solicit business of the type performed by Acrisure or its affiliates from any person or company that is Acrisure's or its affiliates' customer at the time of such solicitation, or who was a customer of Acrisure or its affiliates during the one-year period preceding the solicitation.

(b)    in Section 12(b)(iii) of the Employment Agreement that for the three-consecutive-year period after his termination, Jacobi would not, directly or indirectly, persuade any person or company that is Acrisure's or its affiliates' customer at the time of such persuasion, or that was Acrisure's or its affiliates' customer during the one-year period preceding the persuasion, to cease doing business with or to reduce the amount of business done with Acrisure or its affiliates.

(*Id.* § 12(b)(ii)-(iii) (the "Business Non-Solicitation Covenants").)

8

42.    Jacobi agreed in the Employment Agreement to an employee non-solicitation covenant.  Specifically, in Section 12(b)(i) of the Employment Agreement, Jacobi agreed that for the three-consecutive-year period after his termination, Jacobi would not, directly, or indirectly, employ, or assist any other person or company in employing, any person who is then employed by Acrisure or its affiliates or was employed by Acrisure or its affiliates during the one-year period preceding the employment or assistance.  (*Id.* § 12(b)(i) (the "Employee Non-Solicitation Covenant").)p

43.    In Section 13(a) of the Employment Agreement, Jacobi "stipulate[d] that the duration, activities restricted and geographic scope of the Restrictive Covenants" in Section 12— including the Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant— "are reasonable and are necessary to protect the business and goodwill" of Acrisure.  (*Id.* § 12(a).)

44.    In Section 13(d) of the Employment Agreement, Jacobi agreed that if he violates any restrictive covenant in Section 12—including the Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant—then the period applicable to each obligation he violated automatically will be extended by a period of time equal in length to the period during which the violation occurred.  (*Id.* § 13(d).)

45.    The restrictive covenants in Section 12 of the Employment Agreement are reasonable in scope to protect Acrisure's legitimate business interests (including its proprietary and confidential information and relationships with customers), are not harmful to the general public, and are not unreasonably burdensome to Jacobi.  Indeed, pursuant to the Employment Agreement, Jacobi agreed that those restrictive covenants are reasonable.  (*Id.* § 13(a).)

46.    The restrictive covenants in Section 12 of the Employment Agreement apply to the benefit of SWDS, Acrisure and their affiliates.  (*Id.* § 12(d).)

9

47.      Jacobi agreed that his breach of the restrictive covenants in Section 12 of the Employment Agreement "will cause irreparable harm."  (*Id.* § 13(a).)

**Around 9:00 AM Pacific On June 23, 2026, Jacobi Executed
A Highly Choreographed Plan To Resign From Acrisure Effective
<u>Today And Join A Competitor Along With Four Other Acrisure Employees</u>**

48.      At 9:03 AM Pacific June 23, 2026, Jacobi informed Acrisure that he was resigning from Acrisure effective immediately.  Jacobi said:

> **From:** John Jacobi <John.Jacobi@acrisurepg.com>
> **Sent:** Tuesday, June 23, 2026 9:03 AM
> **To:** Vernon Leake <Vernon.Leake@acrisurepg.com>
> **Cc:** Aaron Lodge <Aaron.Lodge@acrisurepg.com>; Paola Rico <Paola.Rico@acrisurepg.com>; John Jacobi <jjacobiswds@yahoo.com>
> **Subject:** Notice of Resignation
>
> Vernon,
>
> After 26 years of employment with SWDS/Acrisure I have made the difficult decision to resign.
>
> I will have my company's CC laptop and door key delivered today.
>
> I wish everyone the absolute best.
>
> John
>
> **△ ACRISURE®**
> PROTECTION GROUP
>
> **JOHN JACOBI**
> SVP of Sales
> **Direct:** 858.342.6449
> **Office:** 866.816.7937
> **www.AcrisurePG.com**
>
> CONFIDENTIALITY STATEMENT: This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain information that is confidential, privileged original communication. Thank you for your cooperation.

49.      Jacobi did not provide Acrisure with written notice of termination of his employment at Acrisure at least 45 days before his resignation and joining a competitor of Acrisure's.  Jacobi violated the Notice Provision in his Employment Agreement.

50.      Jacobi did not resign from Acrisure alone.  On information and belief, Jacobi assisted or facilitated EPIC in its attempts to hire at least three other Acrisure employees.

51.    At 9:00 AM Pacific, Ryan Hoff ("Hoff") resigned from Acrisure "effective immediately."  Hoff said:



**From:** Ryan Hoff <Ryan.Hoff@acrisurepg.com>
**Sent:** Tuesday, June 23, 2026 9:00 AM
**To:** Vernon Leake <Vernon.Leake@acrisurepg.com>; Aaron Lodge <Aaron.Lodge@acrisurepg.com>; Paola Rico <Paola.Rico@acrisurepg.com>; 315 Ryan Hoff <rdhoff2013@gmail.com>
**Subject:** Resignation

Vernon/Aaron-

I'm writing to let you know that I'm resigning from my position at Acrisure Protection Group, effective immediately.

This wasn't an easy decision. I'm forever grateful for the opportunities I've had here, the work we've built together, and the people I've had the honor to work alongside.  I have nothing but respect for this team and wish nothing but the best for all at APG.

I've left my work laptop, company Mac (with password), and my key card and company credit card in my top drawer.

Again, all the best to each of you.

Best regards,

- Ryan

**RYAN HOFF**
Chief Revenue Officer
**Direct:** 949.550.4111
**Office:** 866.816.7937
**www.AcrisurePG.com**

ACRISURE PROTECTION GROUP
CA License: #4381066
Dealer Protection Group  |  CA Agency License #0C77432  |  **Acrisure of California, LLC**  |  CA Agency License #0K07568

52.    Hoff worked at Acrisure as a District Manager.

53.    Hoff worked with Jacobi at Acrisure.

54.    Upon information and belief, Hoff accepted employment with EPIC or one of its affiliates as the Chief Revenue Officer of EPIC Auto Dealer F&I Solutions.

55.    Upon information and belief, Jacobi assisted EPIC in hiring Hoff.

56.     At 9:04 AM Pacific on June 23, 2026 at, George Hogan ("Hogan") resigned from Acrisure.  Hogan said:

**From:** George Hogan <George.Hogan@acrisurepg.com>
**Sent:** Tuesday, June 23, 2026 9:04 AM
**To:** Vernon Leake <Vernon.Leake@acrisurepg.com>
**Cc:** George Hogan <georgehogan@msn.com>; Paola Rico <Paola.Rico@acrisurepg.com>; Aaron Lodge <Aaron.Lodge@acrisurepg.com>
**Subject:** Letter of Resignation

Good morning Vernon,

I wanted to first thank you for the opportunities you and Acrisure PG have provided through the years for me and my professional life. Effective immediately I am resigning my position with Acrisure PG.

57.     Hogan worked at Acrisure as a Vice President of Sales.

58.     Hogan worked with Jacobi at Acrisure.

59.     Upon information and belief, Hogan accepted employment with EPIC or one of its affiliates as a Principal of the EPIC Auto Dealer F&I team.

60.     Upon information and belief, Jacobi assisted EPIC in hiring Hogan.

61.     At 9:04 AM Pacific on June 23, 2026, Jeffrey Rodewald ("Rodewald") resigned from Acrisure "effective immediately."  Rodewald said:

**From:** Jeff Rodewald <Jeff.Rodewald@acrisurepg.com>
**Sent:** Tuesday, June 23, 2026 9:04 AM
**To:** Vernon Leake <Vernon.Leake@acrisurepg.com>; Aaron Lodge <Aaron.Lodge@acrisurepg.com>
**Cc:** Jeff Rodewald <jdrodewald@yahoo.com>; Paola Rico <Paola.Rico@acrisurepg.com>
**Subject:** Letter of Resignation

Good morning gentlemen,
After great consideration, I have decided to pursue a different opportunity.  This email serves as a notice of my resignation effective immediately.  I am sending my company credit and gas cards, and building keys to the office today to the attention of Paola in HR.  I wanted to personally thank everyone that I have worked with over the past 25 years.  This was not an easy decision, but the best for the future of myself and Cinda.
Best regards,



**JEFF RODEWALD**
Market Vice President
**Direct:** 858.442.9936
**Office:** 866.816.7937
**www.AcrisurePG.com**

CA License: #0J14408
Dealer Protection Group  |  CA Agency License #0C77432  |  **Acrisure of California, LLC**  |  CA Agency License #0K07568

62.     Rodewald worked at Acrisure as Market Vice President.

63.     Rodewald worked with Jacobi at Acrisure.

64.     Upon information and belief, Rodewald accepted employment with EPIC or one of its affiliates as a Principal of the EPIC Auto Dealer F&I team.

65.    At 10:58 AM Pacific on June 23, 2026, Scott Jacobi ("Scott") resigned from

Acrisure "effective immediately."  Scott said:

**From:** Scott Jacobi <Scott.Jacobi@acrisurepg.com>
**Sent:** Tuesday, June 23, 2026 10:58 AM
**To:** Paola Rico <Paola.Rico@acrisurepg.com>
**Cc:** scottjacobi@ymail.com
**Subject:** Notice of Resignation

Paola,

Please except this notice of Resignation effective immediately.

I have an Acrisure phone, Acrisure computer, and a gas card that I will be returning at the Irvine office today.

Best,

Scott Jacobi



**SCOTT JACOBI**
District Manager
Direct: 949.410.0522
Office: 866.816.7937
www.AcrisurePG.com

66.    Scott worked at Acrisure as a District Manager.

67.    Scott worked with Jacobi at Acrisure.

68.    Upon information and belief, Scott accepted employment with EPIC or one of its

affiliates.

69.    Upon information and belief, Scott is now employed by EPIC or one of its

affiliates.

70.    Upon information and belief, Jacobi assisted EPIC in hiring Scott.

**On June 23, 2026, Jacobi Sends Acrisure**
**A Letter Electing To "Void" His Employment Agreement**

71.     By 9:25 AM Pacific on June 23, 2026, Jacobi, through a letter from his counsel hand delivered to Acrisure's counsel, informed Acrisure that Jacobi had "elected to void his Employment Agreement dated November 1, 2019."

72.     That letter requested that Acrisure inform Jacobi's counsel before the end of the day whether Acrisure intended to enforce the restrictive covenants, forum selection and choice-of-law clauses in his Employment Agreement.

**Within An Hour Of Resigning, Jacobi And His New Employer Sued Acrisure**

73.     Within an hour of resigning from Acrisure effective immediately, Jacobi filed a new lawsuit in the U.S. District Court for the Central District of California against Acrisure seeking to invalidate the restrictive covenants in his Employment Agreement.  *See John Jacobi v. Acrisure Partner Group*, *LLC*, No. 8:26-cv-01611, ECF No. 1 (C.D. Cal. filed June 23, 2026). In the California Action, Jacobi asserted four counts against Acrisure, each related to the enforceability of the Employment Agreement.  (*Id.*)

74.     Jacobi was not the only plaintiff in that California lawsuit.  Jacobi's new employer, EPIC, also is a plaintiff.

75.     Jacobi's Complaint is 88 paragraphs and signed by two law firms.

**At 4:00 PM Eastern, EPIC Issues A**
**Press Release Announcing Jacobi's Defection From Acrisure**

76.     As of today, June 23, 2026, Jacobi is employed by or otherwise affiliated with EPIC.

14



77. On June 23, 2026 at 1:00 pm Pacific, EPIC issued a press release announcing that "auto dealership finance and insurance experts . . . John Jacobi have joined" EPIC as part of its Auto Dealer Group. The press release also stated that the three other individuals that resigned Acrisure within minutes of Jacobi had also joined EPIC as part of the same group.

78. In that press release, Jacobi is qouted:

> "This is an incredible opportunity for us to join a team that is uniquely committed to its people and culture, and a brand that reflects that same commitment and passion for its clients," said **Jacobi**. "We are thrilled to be on the same team with Eric Shaw of EPIC as together we are ready to tap into the incredible potential that this partnership has created."

79. EPIC is a competitor of Acrisure or one of its affiliates, including because the products and services of EPIC are competitive to the products and services of Acrisure.

80. On information and belief, Jacobi is being indemnified by EPIC.

**Jacobi Agreed That The Employment Agreement Would Be
Governed By Michigan Law And All Disputes Would Be Resolved Only In Michigan**

81. In Section 17(d) of the Employment Agreement, Jacobi agreed that:

> The terms and conditions of this Agreement shall be governed, construed, interpreted and enforced in accordance with the domestic laws of the **State of Michigan**, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Michigan.

15

(Employment Agreement § 17(d) (emphasis added).)

82.     In Section 17(d) of the Employment Agreement, Jacobi agreed that all actions arising from or related to the Employment Agreement for which a party seeks injunctive relief shall be brought only in a Michigan court:

> All actions or proceedings arising from or related to this Agreement and **for which a party seeks injunctive** or equitable relief shall be brought **only** in a state court of competent subject matter jurisdiction in Kent County, Michigan, **or in the federal courts of competent subject matter jurisdiction in the Western District of Michigan, Southern Division**.  Each party expressly and irrevocably consents to personal jurisdiction and venue in such courts, and agrees not to object to such jurisdiction or venue on the ground *of forum non conveniens* or otherwise.

(*Id.* § 17(d) (emphasis added).)

**Jacobi Agreed That Acrisure Is Entitled To Obtain Injunctive
Relief If He Breached The Restrictive Covenants In The Employment Agreement**

83.     Pursuant to Section 13(b) of the Employment Agreement, Jacobi agreed that Acrisure "shall be entitled to legal and equitable relief in court" if Jacobi "breaches any Restrictive Covenant" in Section 12 of the Employment Agreement.  (Employment Agreement § 13(b).)

84.     Jacobi further agreed in Section 13(b) of the Employment Agreement that Acrisure "shall be entitled to seek court action . . . to specifically enforce the terms of the Restrictive Covenants, and to obtain a temporary or permanent injunction in an action in equity without the necessity of proving actual damages."  (*Id.*)  This includes the right "to seek and obtain an ex-parte restraining order immediately upon the commencement of any such action. Such temporary injunction shall remain in effect, pending a hearing where [Jacobi] must show cause as to why such injunction should be lifted."  (*Id.*)

16

85.     In Section 13(a) of the Employment Agreement, Jacobi agreed that a breach of the restrictive covenants contained in Section 13 of the Employment Agreement would "cause irreparable harm to" Acrisure.  (*Id.* § 13(a).)

86.     Unless enjoined, Jacobi will continue to violate his contractual obligations to Acrisure.

87.     Jacobi's wrongful conduct is causing immediate, irreparable harm to Acrisure.

<u>COUNT I</u>
**(Breach of Employment Agreement—Injunctive Relief:
Business Non-Solicitation Covenants)**

88.     Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

89.     The Employment Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Jacobi.

90.     The Employment Agreement was made for valid consideration.

91.     Acrisure fully performed its obligations under the Employment Agreement.

92.     Under the Employment Agreement, Jacobi agreed to abide by the Business Non-Solicitation Covenants during his employment and for three years following his termination from Acrisure.

93.     The Employment Agreement is reasonable and necessary to protect Acrisure's proprietary and confidential information, relationships with its customers, and other reasonable competitive business interests and Acrisure property.

94.     Upon information and belief, Jacobi has breached or imminently will breach his obligations under the Business Non-Solicitation Covenant by soliciting business of the type performed by Acrisure or Acrisure customers to move their business to EPIC within the time period and geographic restrictions of the Business Non-Solicitation Covenants.

17

95.     Jacobi's actual or imminent breach will directly and proximately cause Acrisure irreparable damage and injury, including to its competitive place in the insurance and risk management market and to its relationships with its customers, unless restrained and enjoined by this Court.  There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

## COUNT II
### (Breach of Employment Agreement—Injunctive Relief:
### Employee Non-Solicitation Covenant)

96.     Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

97.     The Employment Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Jacobi.

98.     The Employment Agreement was made for valid consideration.

99.     Acrisure fully performed its obligations under the Employment Agreement.

100.    Under the Employment Agreement, Jacobi agreed to abide by the Employee Non-Solicitation Covenant during his employment and for three years following his termination from Acrisure.

101.    The Employment Agreement is reasonable and necessary to protect Acrisure's proprietary and confidential information, relationships with its customers, and other reasonable competitive business interests and Acrisure property.

102.    Upon information and belief, Jacobi has breached or imminently will breach his obligations under the Employee Non-Solicitation Covenant by soliciting, employing or assisting EPIC in soliciting or employing Acrisure employees within the time period and geographic restrictions of the Business Non-Solicitation Covenants.

18

103.     Jacobi's actual or imminent breach has and will directly and proximately cause Acrisure irreparable damage and injury unless restrained and enjoined by this Court.  There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

<u>**COUNT IV**</u>
**(Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201, 2202)**

104.     Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

105.     An actual controversy has arisen and now exists between Acrisure and Jacobi concerning the parties' rights and obligations under the Employment Agreement.

106.     Acrisure requires a judicial determination of the respective rights of itself and Jacobi under the Employment Agreement.  Specifically, Acrisure seeks a declaration that, based on the plain language of the Employment Agreement:

(a)     The Business Non-Solicitation Covenants and Employee Non-Solicitation Covenant in the Employment Agreement are valid and enforceable.

(b)     Jacobi is obligated to fulfill his obligations under the Employment Agreement, including, but not limited to, abiding by the Business Non-Solicitation Covenants and Employee Non-Solicitation Covenant.

107.     Such a declaration is necessary and appropriate at this time in order that Acrisure may ascertain its rights under the Employment Agreement, and will serve a useful purpose in clarifying the parties' legal relations and terminate the uncertainty giving rise to this proceeding.

## **<u>INJUNCTIVE AND DECLARATORY RELIEF REQUESTED</u>**

WHEREFORE, Acrisure requests that this honorable Court enter the following relief:

A.     Enjoin Jacobi from violating the Business Non-Solicitation Covenants for three years from (i) the date of Jacobi's termination of his employment at Acrisure or (ii) the date of Jacobi's last breach of the Business Non-Solicitation Covenants, whichever is later.

B.     Enjoin Jacobi from violating the Employee Non-Solicitation Covenant for three years from (i) the date of Jacobi's termination of his employment at Acrisure or (ii) the date of Jacobi's last breach of the Employee Non-Solicitation Covenant, whichever is later.

C.     Declare and decree that based on the plain language of the Employment Agreement:

    i.     The Business Non-Solicitation Covenants and Employee Non-Solicitation Covenant in the Employment Agreement are valid and enforceable.

    ii.     Jacobi is obligated to fulfill his obligations under the Employment Agreement, including, but not limited to, abiding by the Business Non-Solicitation Covenants and Employee Non-Solicitation Covenant.

D.     Grant Acrisure such other and further relief as the Court deems just and proper.

Dated:  June 23, 2026

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP

By:  _/s/ Christopher G. Clark_

Christopher G. Clark (663455-MA)
Catherine Fisher (686163-MA)
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
christopher.clark@skadden.com
catherine.fisher@skadden.com

- and -

WARNER NORCROSS + JUDD LLP
Edward J. Bardelli (P53849)
150 Ottawa Avenue, Suite 1500
Grand Rapids, Michigan 49503
(616) 752-2000
ebardelli@wnj.com

*Attorneys for Plaintiffs*
*Acrisure, LLC and SWDS Holdings, Inc.*

21