UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACRISURE LLC, et al.,

Plaintiffs,

v.

JOHN JACOBI,

Defendant.

Case No. 1:26-cv-1917

Hon. Hala Y. Jarbou

______________________________________/

**OPINION**

Plaintiffs Acrisure, LLC, and SWDS Holdings, Inc., bring this breach of contract lawsuit against Defendant John Jacobi, a former Acrisure employee. Jacobi has moved to dismiss or transfer due to lack of personal jurisdiction and improper venue (ECF No. 9). Plaintiffs have also moved for a preliminary injunction to enforce the non-solicitation provision of Jacobi's employment contract (ECF No. 11). As explained below, the Court finds that Jacobi is subject to personal jurisdiction here, this district is the proper forum for this litigation, and Plaintiffs are entitled to a preliminary injunction.

## I. BACKGROUND

Acrisure is an insurance brokerage company that operates nationwide. In 2019, Acrisure purchased SWDS Holdings, which employed Jacobi at the time. As part of the sale, Acrisure executed an employment contract with Jacobi. Relevant to this case, the employment contract contains a non-solicitation clause that bars Jacobi from "solicit[ing] business" from any Acrisure customer or "persuad[ing]" an Acrisure customer to stop doing business with, or reduce its business with, Acrisure. (Employment Agreement ¶ 12.b, ECF No. 15-2.) The non-solicitation

clause lasts for three years after the termination date. (*Id.*) The contract also contains the following choice-of-law and venue provision:

> The terms and conditions of this Agreement shall be governed, construed, interpreted and enforced in accordance with the domestic laws of the State of Michigan, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Michigan. . . . All actions or proceedings arising from or related to this Agreement and for which a party seeks injunctive or equitable relief shall be brought only in a state court of competent subject matter jurisdiction in Kent County, Michigan, or in the federal courts of competent subject matter jurisdiction in the Western District of Michigan. Each party expressly and irrevocably consents to personal jurisdiction and venue in such courts, and agrees not [to] object to such jurisdiction or venue on the ground of *forum non conveniens* or otherwise.

(*Id.* ¶ 17.d (emphasis omitted).)

At Acrisure, Jacobi served as senior vice president of sales and "was responsible for, among other things, managing, soliciting, and selling customers various insurance products and services." (Lodge Decl. ¶¶ 18–19, ECF No. 13.) As part of his work, Jacobi accessed "Acrisure's proprietary and confidential information, including . . . employee information, costs, pricing, customer and vendor lists, customer contracts, sales strategies, marketing strategies, and underwriter and insurance carrier strategies and agreements." (*Id.* ¶ 20.)

On the morning of June 23, 2026, Jacobi resigned from his position at Acrisure via email. (Compl. ¶ 22.) His counsel also sent a letter to Acrisure's counsel stating that Jacobi had decided to "void" his employment agreement. (*Id.* ¶ 29.) Jacobi accepted a job at Edgewood Partners Insurance Center ("EPIC"), an insurance brokerage firm that directly competes with Acrisure. (*Id.* ¶¶ 23–24.) Four other Acrisure employees who worked with Jacobi resigned on the same day. (*Id.* ¶¶ 25–30.) Over the next few weeks, six additional Acrisure employees left to join EPIC. (*Id.* ¶¶ 31–34.) Plaintiffs allege that "[s]ince Jacobi has left Acrisure, more than 70 customers that

Jacobi was connected to or directly responsible for while he was employed at Acrisure have notified Acrisure that they are switching their business from Acrisure to EPIC." (*Id.* ¶ 35.)

On the day Jacobi resigned, he and EPIC filed a lawsuit against Acrisure in the U.S. District Court for the Central District of California, seeking a declaratory judgment that the restrictive covenants in his employment contract are unenforceable. *See Jacobi v. Acrisure Partner Grp.*, No. 8:26-cv-1611 (C.D. Cal. filed June 23, 2026). Later that day, Acrisure filed this lawsuit asserting claims for breach of the non-solicitation clause. On July 15, Jacobi filed a motion to dismiss (ECF No. 9); on July 20, Plaintiffs moved for a preliminary injunction (ECF No. 11). Both motions are now fully briefed. Since briefing was completed, the Central District of California transferred its case to this Court. *See Jacobi v. Acrisure Partner Grp.*, No. 8:26-cv-1611, (C.D. Cal. Aug. 25, 2026), ECF No. 69.

In its motion for a preliminary injunction, Acrisure includes additional evidence regarding Jacobi's alleged breach of the non-solicitation clause. The evidence relates to four current or former Acrisure customers: Dalton Motors, Simpson Auto Group, Kaminsky Group, and Precision Honda. Plaintiffs argue that Jacobi has caused or attempted to cause these customers to switch their business to EPIC:

- *Dalton Motors*. Dalton is an Acrisure customer that Jacobi has previously worked with. (Langill Decl. ¶ 3, ECF No. 12.) An Acrisure district manager, Ed Langill, states that on June 26, Dalton employees told him that Jacobi "had been in the [Dalton Subaru] dealership earlier in the day" and that Jacobi "had met with the General Managers of Dalton Toyota, Dalton Subaru, and Dalton Hyundai." (*Id.* ¶ 5.) Email records suggest that Jacobi scheduled a meeting with the CEO of Dalton on June 22, 2026—the day before his resignation. (Dalton Emails, ECF No. 15-20.)

- *Simpson.* Simpson is a former Acrisure customer, and Jacobi previously supervised the district manager who worked with Simpson, Craig Cleaver. According to Cleaver, on July 1, 2026, the head of Simpson said "that he had spoken directly with John Jacobi after Mr. Jacobi left Acrisure" and "discussed moving Simpson Auto Group's business from Acrisure to [EPIC]." (Cleaver Decl. ¶ 6, ECF No. 14.) A week later, Simpson left Acrisure for EPIC. (*Id.* ¶ 7.)
- *Kaminsky*. Langill also states that "[o]n July 16, 2026, [he] spoke to Greg Kaminsky, who owns Toyota of El Cajon, Honda of El Cajon, Toyota Carlsbad and Puente Hills Toyota. Mr. Kaminsky informed [Langill] that John Jacobi recently gave a presentation on behalf of EPIC to present EPIC's offerings to Mr. Kaminsky." (Langill Decl. ¶ 6.)
- *Precision Honda*. On the afternoon of June 26, Jacobi emailed Precision Honda and stated, "Thank you for seeing us this afternoon. . . . By replying all to this email, you will change the broker of record to Epic brokers. . . ." (Precision Honda Emails 5, ECF No. 15-23.) The president of Precision Honda responded and agreed to switch over to EPIC. (*Id.* at 4.) A couple of weeks later, on July 7, Precision Honda returned its business to Acrisure. (*Id.* at 3.)

Based on the above facts, Acrisure seeks an injunction prohibiting Jacobi from violating the non-solicitation clause of his employment contract. Jacobi, on the other hand, seeks dismissal of this case for lack of personal jurisdiction and improper venue.

## II. LEGAL STANDARDS

### A. Personal Jurisdiction

If a party moves to dismiss a pleading for lack of personal jurisdiction, the nonmovant bears the burden of establishing the court's jurisdiction over the movant. *Air Prods. Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l*

*Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)).

When the Court is presented with a properly supported 12(b)(2) motion and opposition, it "has three procedural alternatives." *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 769 (E.D. Mich. 2013). It may decide the motion on the written submissions, permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any factual disputes. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020); *Theunissen*, 935 F.2d at 1458. To survive a motion to dismiss decided on the papers alone, a nonmovant need only set out facts sufficient to permit the conclusion that the court has personal jurisdiction. All inferences are drawn in the nonmovant's favor. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003).

**B. Venue**

A motion to dismiss an action filed in an improper venue is adjudicated in the same manner as a motion to dismiss for want of personal jurisdiction under Rule 12(b)(2). The burden of establishing that venue is proper in the face of a well-formulated challenge lies with the nonmovant. *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 619 (6th Cir. 2025). And to meet that burden, the nonmovant must show that her pleadings and affidavits, if taken to be true, establish that venue is proper in the deciding court. *Id.* at 621. "If venue is improper, the case may be either dismissed or transferred, if transfer is in the interest of justice, to a district where venue is proper." *DBS Corp. v. Reid Cons. Co.*, No. 1:10-cv-154, 2010 WL 3806415, at *3 (E.D. Tenn. Sept. 23, 2010) (citing 28 U.S.C. § 1406(a)). And even if venue is proper here, the Court

may transfer the case to another district based on "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a).

**C. Preliminary Injunction**

Whether to issue a preliminary injunction is in the discretion of the district court. *Planet Aid v. City of St. Johns*, 782 F.3d 318, 323 (6th Cir. 2015). A "preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (cleaned up). An injunction at this stage should "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (internal citation omitted). A court considers four factors: (1) whether the movant has established a substantial likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the preliminary injunction; (3) whether the balance of the equities weighs in the movant's favor, and (4) whether a preliminary injunction is in the interests of the public. *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. 2025).

"[A] hearing is only required when there are disputed factual issues, and not when the issues are primarily questions of law." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007). "[W]here material facts are not in dispute . . . , district courts generally need not hold an evidentiary hearing." *Id.* (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998)). Of note, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

## III. ANALYSIS

Although the parties dispute whether Jacobi has violated his employment agreement, much of the briefing is devoted to the threshold question of whether this is the proper court to hear this

case in the first place. The Court's analysis thus begins with Jacobi's three arguments against this Court hearing the case: the first-to-file rule, personal jurisdiction, and venue. Because the Court finds that none of these arguments succeed, it proceeds to the merits and finds that a preliminary injunction is warranted.

**A. Antecedent Issues**

**1. First-to-File Rule**

Jacobi contends that under the first-to-file rule, this Court should allow the issues in this lawsuit to be resolved by the Central District of California, where his earlier-filed lawsuit is pending. "The first-to-file rule is a prudential doctrine" that applies when two similar cases are filed in different federal courts. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). The doctrine provides that "the court in which the first suit was filed should *generally* proceed to judgment." *Id.* Adhering to this rule promotes "comity" among the federal courts, avoids "duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." *Id.*

Because the Central District of California has transferred its case to this Court, Jacobi's invocation of the first-to-file rule is largely moot. But even before the transfer, the Court would have found the first-to-file rule inapplicable.

The first-to-file rule only applies when two suits are "duplicative," which means they "involve nearly identical parties and issues." *Id.* (internal quotation marks omitted). The parties in this case and the California case overlap, but they are not identical. This case involves Acrisure, SWDS, and Jacobi; the California case involves Acrisure, Jacobi, EPIC, Acrisure Protection Group, LLC, Acrisure Partner Group, LLC, and Acrisure of California Partner Group, LLC. Even if Acrisure is grouped together with its various affiliates, the California case still has an additional party—EPIC—not present in this litigation.

More significantly, the claims in the two cases meaningfully differ. Two sets of claims are only "nearly identical" when the cases are "materially on all fours and have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Id.* at 791 (internal quotation marks omitted). The California action only concerns the enforceability of the contract's non-solicitation clause, whereas this case concerns Jacobi's alleged breach of that clause. Resolution of the California action would not "leave[] little or nothing to be determined in" this action because that resolution would not address whether Jacobi is in breach. *Id.*; *see Ctr. for Biological Diversity v. Davis*, No. CV-26-21, 2026 WL 2192256, at *14 (D. Mont. July 29, 2026) ("Courts have determined that the first-to-file rule may not apply where the second-filed action is broader than the first action.").

In short, the first-to-file rule does not preclude this Court from entertaining the case.

**2. Personal Jurisdiction**

Jacobi also argues that this Court lacks jurisdiction over his person. "[W]ithout personal jurisdiction, a federal court is powerless to proceed to an adjudication." *Boulger v. Woods*, 917 F.3d 471, 476 (6th Cir. 2019) (internal quotation marks omitted). However, a party who agrees to a forum selection clause generally waives any objection to personal jurisdiction in the selected forum. *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006). And Jacobi's employment contract contains a forum selection clause providing that all claims related to the contract will be brought in a Michigan court. Jacobi counters that the forum selection clause is invalid under California law, which generally prohibits employment contracts from containing a clause "[r]equir[ing] the employee to adjudicate outside of California a claim arising in California." Cal. Lab. Code § 925(a)(1). Plaintiffs argue that § 925 is inapplicable because this Court should apply Michigan, not California, law in determining the validity of the forum selection clause.

"When a federal court sitting in diversity exercises personal jurisdiction over a party pursuant to a forum-selection clause, state law controls the question of whether that clause is enforceable." *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 388 (6th Cir. 2017). However, the parties disagree about *which* state law controls. "A federal court sitting in diversity must apply the choice-of-law rules of the forum state." *Id.* at 389. Thus, the Court applies Michigan choice-of-law rules to determine what state's local law governs the enforceability of the forum selection clause. Plaintiffs argue that Michigan choice-of-law rules support the application of Michigan law, whereas Jacobi argues that Michigan choice-of-law rules support the application of California law. For the reasons explained below, Plaintiffs are correct that Michigan law applies.

Jacobi contends that Michigan's choice-of-law rules regarding contracts require the Court to apply California law to determine the forum selection clause's enforceability because California is the state with the most significant connection to the contractual dispute. However, this argument overlooks the fact that Michigan courts do not conduct a run-of-the-mill choice-of-law analysis to determine the validity of a forum selection clause. Such an analysis would establish which *substantive* law applies to a contract, but Michigan courts view the validity of a forum selection clause as a *procedural* matter that is independent from the broader question of what law governs the contract itself. *See Barshaw v. Allegheny Performance Plastics, LLC*, 965 N.W.2d 729, 735, 737 (Mich. Ct. App. 2020). Thus, absent unusual circumstances, "the Michigan court in which the action has been filed shall apply Michigan law in determining the effect of the forum-selection clause." *Id.* at 737. Jacobi does not point to any circumstances that would support a departure from this rule.

Because Michigan (and not California) law determines the validity of the forum selection clause, § 925 has no relevance. Jacobi makes no argument as to why the forum selection clause is

invalid under Michigan law. *See Barshaw*, 965 N.W.2d at 734 ("Michigan's public policy favors the enforcement of contractual forum-selection clauses . . . ."). Thus, the forum selection clause is valid, and it authorizes this Court to exercise personal jurisdiction over Jacobi.

Even if *Barshaw* did not apply, and the Court instead employed Michigan's general choice-of-law rules to determine what law governs the validity of the forum selection clause, the same result would obtain. Jacobi's employment contract contains a choice-of-law clause requiring the application of Michigan law.[1] "Michigan looks to the Restatement (Second) of Conflict of Laws to determine whether it will enforce a choice-of-law clause." *Stone Surgical*, 858 F.3d at 389; *see Magna Seating Inc. v. Adient US LLC*, No. 353241, 2021 WL 2026125, at *3 (Mich. Ct. App. May 20, 2021). The Restatement provides the following:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless . . .
>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (A.L.I. 1971).

Regardless of whether subsection (1) or (2) applies—that is, whether the substantive issue is one that the parties could resolve by an explicit provision—the outcome is that Michigan law

[1] It is true that California law also invalidates most choice-of-law clauses in employment contracts. *See* Cal. Lab. Code § 925(a)(2) (employment contract cannot "[d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California"). But California's laws regarding choice-of-law provisions would only be relevant if the Court were applying California law to determine the validity of the choice-of-law clause, which it is not. Rather, the Court applies Michigan law. *See Stone Surgical*, 858 F.3d at 389.

applies.[2] If subsection (1) applies, then the choice-of-law clause is operative, and Michigan law applies. If subsection (2) applies, then the choice-of-law clause is operative unless the law of another state (i.e., California) would apply absent the choice-of-law clause, the choice-of-law clause violates the other state's fundamental policy, and the other state has "a materially greater interest than" Michigan in applying its law to this issue. Jacobi contends that California law would apply to the contract absent a choice-of-law clause because he performed his work in California. He also argues that the provision of the contract Plaintiffs seek to enforce—that is, the forum selection clause—is contrary to the fundamental policy of California, which generally bars the use of forum selection clauses requiring employees to litigate outside their home state. *See* Cal. Lab. Code § 925(a)(1).

Even assuming these contentions are true, Jacobi's argument fails because he cannot show that California has a materially greater interest than Michigan. In *Stone Surgical*, the Sixth Circuit applied Michigan choice-of-law rules to a nearly identical situation and held that the employee's state of residence (Louisiana) did have a *greater* interest in the controversy than the employer's state of operation (Michigan), but not a *materially greater* interest. 858 F.3d at 390. The court explained that Michigan had a strong interest in protecting its businesses and preventing them from experiencing unfair competition, which is also a salient interest in this case. *Id.* at 390–91. Although the clause immediately at issue here is the forum selection clause, not the non-solicitation clause, Michigan also has a strong interest in allowing its businesses to litigate in their contractually agreed-upon forums. *See Barshaw,* 965 N.W.2d at 734 ("Michigan's public policy favors the enforcement of contractual forum-selection clauses . . . ."). Based on *Stone Surgical*'s

---

[2] In fact, "Michigan law appears to apply the § 187(2) exceptions even when operating under § 187(1) in its choice-of-law analysis." *Stone Surgical*, 858 F.3d at 389. Thus, the analysis is identical regardless of whether subsection (1) or (2) applies.

holding that a state does not have a materially greater interest in an employment-related controversy merely because the employee works there, the Court finds that California does not have a materially greater interest in this controversy than Michigan. Thus, the choice-of-law clause dictates that Michigan local law determines the enforceability of the forum selection clause. In turn, as noted above, the application of Michigan local law renders the forum selection clause valid and enforceable.[3]

In short, the employment contract's forum selection clause is enforceable, and therefore allows this Court to exercise personal jurisdiction over Jacobi.

**3. Venue**

Jacobi also argues that venue is improper and the Court must transfer the case to a different federal court under 28 U.S.C. § 1406. He also contends that even if venue is proper, the convenience of the parties and the interest of justice support a transfer to California under 28 U.S.C. § 1404(a). The Court will address these arguments in turn.

First, Jacobi contends that venue is improper because the requirements of 29 U.S.C. § 1391 are not met: Jacobi does not reside here, the events giving rise to Plaintiffs' claims did not occur here, and there is another district where this action could be brought. *See* 29 U.S.C. § 1391(b)(1)–(3). Plaintiffs counter that the employment agreement contains a forum selection clause requiring litigation to take place in Michigan and waiving any objections to venue. (*See* Employment

[3] Plaintiffs argue separately that a court applying California law would also enforce the forum selection clause because § 925—which would otherwise potentially void the forum selection clause—contains an exception for employees who were represented by counsel when negotiating their employment contract. *See* Cal. Lab. Code § 925(e). However, because this Court concludes that it must apply Michigan law to determine the enforceability of the forum selection clause, it does not address the application of § 925.

Contract ¶ 17.d.) However, Jacobi contends that a contractual agreement may not render venue proper where it is otherwise improper under § 1391.[4]

There is a split among district courts as to whether a forum selection clause may expand the set of districts where venue is proper beyond those listed in § 1391. *See* 14D Wright & Miller's Federal Practice & Procedure § 3803.1 (4th ed. 2026) (noting disagreement and collecting cases). The courts that have held a forum selection clause may *not* create venue rely primarily on the Supreme Court's decision in *Atlantic Marine Construction Co. v. United States District Court*, 571 U.S. 49 (2013). That case dealt with the reverse of the present question: it held that a forum selection clause cannot make venue *improper* when it is otherwise proper under § 1391. The Court explained:

> When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). *If it does, venue is proper; if it does not, venue is improper*, and the case must be dismissed or transferred under § 1406(a). Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b).

*Id.* at 52 (emphasis added). Although the Court did not address the question of whether a forum selection clause can create venue where it does not otherwise exist, several courts have interpreted the above-quoted language to mean that a forum selection clause has no bearing on a venue determination, and thus cannot render an otherwise improper venue proper. *See, e.g.*, *Nursa, Inc. v. ST. Cloud Rochelle Park, LLC*, No. 2:24-cv-630, 2025 WL 2374374, at *5–6 (D. Utah Aug. 14, 2025); *Howmedica Osteonics Corp. v. DJO Glob., Inc.*, No. CV 16-2330, 2017 WL 1136671, at *3 (D.N.J. Mar. 27, 2017); *G4S Tech., LLC v. WCC Cable, Inc.*, No. 8:17CV182, 2017 WL 4564726, at *2–3 (D. Neb. Oct. 10, 2017).

[4] Plaintiffs do not challenge Jacobi's contention that § 1391 does not provide for venue here, so the Court assumes that contention is correct. It is difficult to determine from the limited factual record whether a substantial portion of the events giving rise to the claims occurred in this district.

However, the language in *Atlantic Marine* that these courts have relied on is mere dicta—the issue of whether a forum selection clause could *create* venue had no bearing on that case. And there are two important reasons to think a contractual provision allows for venue in a district not covered by § 1391. First, a party may generally waive its objections to venue. As the Supreme Court put it, "neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). The analogy to personal jurisdiction is particularly apt because, as noted above, a forum selection clause can function as a pre-litigation waiver of any objections to personal jurisdiction. It makes sense that any objections to venue would be similarly subject to such a contractual waiver. *See, e.g.*, *Nymbus, Inc. v. Sharp*, No. 3:17-cv-1113, 2018 WL 705003, at *6 (D. Conn. Feb. 5, 2018) ("*Atlantic Marine* and the statutory venue factors are inapplicable in light of plaintiff's reliance on a defendant's venue waiver."); *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-cv-893, 2018 WL 1964180, at *8 (E.D. Tex. Apr. 25, 2018) (similar). Thus, even if venue is in some sense "improper" here under § 1391, Jacobi is not entitled to object to that impropriety. *See Huawei*, 2018 WL 1964180, at *8 ("[E]ven if venue is not 'proper,' the parties waived their right to have their suit heard in a proper venue by contractually agreeing to venue in [this Court].").

Second, adopting Jacobi's reading of *Atlantic Marine* would lead to illogical results. Section 1404 allows a court to transfer a case to a district where venue is otherwise improper as long as "all parties have consented." 28 U.S.C. § 1404(a). And the set of districts to which parties have consented includes any "district to which the parties have agreed by contract or stipulation." *Atl. Marine*, 571 U.S. at 59. Thus, even though the forum selection clause does not (under Jacobi's

view) allow Plaintiffs to file suit in this Court, it *does* authorize any other district to transfer this case to this Court under § 1404. This view merely entails that the proper means of enforcing a forum selection clause like the one here is not to file suit in the forum prescribed by the contract, but rather to file suit in a different court (where venue otherwise exists) and then seek a transfer to this Court under § 1404. As other courts have recognized, "[t]his is an inefficient use of the parties' time and the Court's time." *Huawei*, 2018 WL 1964180, at *9. Even stranger is the fact that if the Court were to grant Jacobi's motion to transfer the case to the Central District of California, that court could immediately transfer the case *back* to this district, curing the venue problem. It is difficult to see why Congress would have designed a statutory scheme that produces such bizarre results. This provides another reason to reject Jacobi's interpretation of *Atlantic Marine*. *See United Nat. Foods, Inc. v. Maciel*, No. CV 24-2610, 2025 WL 1047519, at *6 (D. Minn. Apr. 7, 2025) (rejecting this interpretation of *Atlantic Marine* as illogical); *Huawei*, 2018 WL 1964180, at *9 (same).

In sum, even if venue is not proper under § 1391, Jacobi is not entitled to transfer the case to another district because of the forum selection clause and its explicit waiver of objections to venue. This view aligns with common sense and appears to be the majority view among district courts. *See, e.g.*, *Huawei*, 2018 WL 1964180, at *8 (collecting cases). Thus, the Court will deny Jacobi's motion to transfer the case under 28 U.S.C. § 1406.

Jacobi also argues that the Court should transfer the case under § 1404. Even if this Court is authorized to hear the case, § 1404 provides that it may transfer to another district based on "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest

considerations." *Atl. Marine*, 571 U.S. at 62. However, if the parties have already selected a forum via contract, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. The Court may still consider whether the public-interest factors support a transfer, but it is unlikely that those factors will outweigh the agreement of the parties, so "the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

The public-interest factors relevant to a § 1404(a) motion "include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (cleaned up). Jacobi does not explain why these factors would support transferring the case to California. Rather, he argues that California is a more convenient forum because witnesses and evidence are present there. But those are private-interest factors, and the presence of a forum selection clause entails that the private-interest factors support litigation in Michigan. *See id.* Jacobi also asserts that because the California suit was filed first, a transfer is in the public interest. It is true that the presence of an additional lawsuit covering the same subject matter may weigh in favor of a transfer for the sake of efficiency.[5] *See North v. McNamara*, 47 F. Supp. 3d 635, 646–47 (S.D. Ohio 2014) (public-interest factors include "promotion of judicial economy [and] avoidance of inconsistent judgments"). However, because the Central District of California transferred its case here, it is more efficient to keep both cases here than to transfer this one to California. Thus, this case does not present one of the rare instances where this Court should transfer due to the public interest factors in spite of a forum selection clause.

* * *

[5] Note that this principle may justify transferring a case under § 1404 even when the first-to-file rule does not strictly apply.

Having addressed these antecedent issues, the Court now turns to Acrisure's motion for a preliminary injunction.

**B. Preliminary Injunction**

**1. Likelihood of Success on Merits**

**(a) Breach**

Plaintiffs allege that Jacobi violated the non-solicitation clause of his employment agreement by causing Acrisure's customers to transfer their business to EPIC. The non-solicitation clause provides that

> during the Restricted Period (as defined below) Employee shall not, directly or indirectly:
>
> i. employ, or assist any other person or entity in employing, any person who is then employed by Employer or Acrisure or was employed by Employer or Acrisure during the one (1) year period preceding the employment or assistance;
>
> ii. other than on behalf of Employer or its Affiliates, solicit business of the type performed by Employer or Acrisure from any person or entity that is Employer's customer at the time of such solicitation, or who was a customer of Employer as of the Termination Date; or
>
> iii. persuade any person or entity that is Employer's customer at the time of such persuasion, or that was Employer's customer as of the Termination Date, to cease doing business with or to reduce the amount of Business done with Employer.

(Employment Agreement ¶ 12.b.) Plaintiffs argue that Jacobi violated this clause by soliciting at least four customers to switch their business from Acrisure to EPIC: Dalton Motors, Simpson Auto Group, Kaminsky Group, and Precision Honda. Acrisure submits evidence that Jacobi met with representatives from each of these companies, and that two of these companies subsequently left Acrisure for EPIC. This evidence, taken together, suggests that Jacobi has violated the non-solicitation clause.

Jacobi's attempts to refute the above allegations are unconvincing. First, he contends that his June 22, 2026, meeting with Dalton Motors was listed as "tentative" on his calendar. Be that

as it may, the fact that Jacobi scheduled such a meeting provides some evidence that it took place. And Langill stated in a declaration that Dalton Subaru employees told him Jacobi "had met with the General Managers of Dalton Toyota, Dalton Subaru, and Dalton Hyundai." (Langill Decl. ¶ 5.) Jacobi argues that this information is hearsay, but "hearsay evidence may be considered by a district court in determining whether to grant a preliminary injunction." *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) (noting agreement of six other federal circuits); *Lee ex. rel. Doe #1 v. Sevier County*, No. 3:17-cv-41, 2017 WL 1026491, at *3 (E.D. Tenn. Mar. 15, 2017) ("[T]he Federal Rules of Evidence generally do not apply to preliminary injunction hearings."); *see Camenisch*, 451 U.S. at 395 ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.").

Jacobi similarly argues that Acrisure's only evidence regarding Simpson is hearsay: namely, Cleaver's statement in a declaration that the head of Simpson "told [Cleaver] that he had spoken directly with John Jacobi after Mr. Jacobi left Acrisure" and that they "discussed moving Simpson Auto Group's business from Acrisure to [EPIC]." (Cleaver Decl. ¶ 6.) Again, the fact that this statement is hearsay is not dispositive. And the allegation that Jacobi spoke with Simpson about switching to EPIC is corroborated by the fact that the company did subsequently make the switch.

As to Kaminsky, Langill states in a declaration that "Mr. Kaminsky informed [him] that John Jacobi recently gave a presentation on behalf of EPIC to present EPIC's offerings to Mr. Kaminsky." (Langill Decl. ¶ 6.) Jacobi argues that Plaintiffs have not asserted that he tried to convince Kaminsky to transfer his business, but it is reasonable to infer that the purpose of presenting EPIC's offerings would be to persuade Kaminsky to become an EPIC customer. Jacobi also notes that Plaintiffs do not claim Kaminsky actually switched to EPIC, but that fact is not

dispositive either. The contract bars solicitation, not just successful solicitation. For the same reason, Jacobi's contacts with Precision Honda may still have constituted solicitation even if the company, after transferring its business to EPIC, subsequently returned to Acrisure.[6]

Jacobi also argues that his alleged interactions with Acrisure's customers do not qualify as "solicitation." He notes that "Dalton's chief executive requested the lunch" (Def.'s Br. 23, ECF No. 37), implying that solicitation does not occur if the client initiates contact. But this argument does not account for the employment agreement's bar on *persuasion*; Jacobi can persuade a customer to leave Acrisure even if the customer reaches out first. Moreover, if the contract barred only solicitation, Jacobi's argument would still fail: while it is true that simply accepting customers does not qualify as solicitation, Michigan courts have held that an employee violates a non-solicitation clause if they "assume[] an active role in the client's decision-making process." *Total Quality, Inc. v. Fewless*, 958 N.W.2d 294, 304 (Mich. Ct. App. 2020). The evidence in the record suggests that Jacobi attempted to convince Acrisure's clients to transfer to EPIC (and in several cases succeeded). Jacobi thus appears to have played an active role in these clients' decisions. Jacobi also contends that "Simpson attributed his move to his own 'long-term business strategy'" (Def.'s Br. 23), but the fact that a client's decision was motivated by business strategy does not negate the inference that Jacobi solicited that client. Finally, Jacobi notes that Kaminsky merely "heard a 'presentation'" (*id.*), but does not explain why a presentation regarding EPIC's insurance offerings would not qualify as an attempt to solicit Kaminsky's business.

---

[6] Moreover, "[u]nder the doctrine of anticipatory repudiation[,] if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Van Buren Charter Township v. Visteon Corp.*, 904 N.W.2d 192, 202 (Mich. Ct. App. 2017). Arguably, Jacobi's declaration that the employment contract is "void" constitutes an anticipatory repudiation, which would entitle Acrisure to sue. (Compl. ¶ 29.)

In sum, the evidence submitted by Acrisure sufficiently establishes its likelihood of success on the merits of its breach of contract claim. While Jacobi disputes this conclusion, he offers no evidence to refute it—for example, he does not submit an affidavit stating that he is *not* soliciting Acrisure's customers. Thus, the Court need not conduct an evidentiary hearing, as there is no conflicting evidence that would need to be evaluated and weighed. Instead, the Court concludes that Acrisure has met its burden at the preliminary injunction stage.

**(b) Enforceability**

Jacobi argues that even if he breached the non-solicitation clause, it is unenforceable because it is unreasonably broad. The choice-of-law clause in the contract dictates that the Court apply Michigan substantive law to determine the enforceability of the contract.[7] Michigan law provides that employment contracts may include a restrictive covenant if it "is reasonable as to its duration, geographical area, and the type of employment or line of business." Mich. Comp. Laws 445.774a(1).[8] This statutory provision "represents a codification of the common-law rule that the enforceability of noncompetition agreements depends on their reasonableness." *St. Clair Med., P.C. v. Borgiel*, 715 N.W.2d 914, 918 (Mich. Ct. App. 2006) (internal quotation marks omitted). "To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill." *Id.* at 919.

---

[7] The choice-of-law clause is enforceable for the reasons discussed above. *See supra* Section III.A.2.

[8] Section 445.774a(1) applies only to agreements "prohibit[ing] an employee from engaging in employment or a line of business after termination of employment," and the Michigan Court of Appeals has cast doubt on whether non-solicitation provisions—as opposed to non-compete provisions—fall into that category. *See Total Quality*, 958 N.W.2d at 305. But in a more recent (albeit unpublished) case, the Court of Appeals held that it is appropriate to subject non-solicitation clauses to § 445.774a. *See Gen. Med. of Ill. Physicians, PC v. Ampadu*, No. 361260, 2023 WL 7457468, at *20 (Mich. Ct. App. Nov. 9, 2023). Because Jacobi premises his arguments on § 445.774a, the Court will assume that it applies here.

Michigan courts have held that "employers have legitimate business interests in restricting former employees from soliciting their customers." *Total Quality*, 958 N.W.2d at 306 (upholding non-solicitation clause as reasonable). Jacobi argues that the non-solicitation clause here is unreasonable because it extends to customers of both Acrisure and its affiliates, it is not limited to customers with whom Jacobi interacted as an Acrisure employee, and it imposes a nationwide bar for three years. First, the Court does not see why the inclusion of Acrisure's affiliates should change the analysis. Insofar as Acrisure and its affiliates are operating in the same industry using the same strategies and the same confidential information, it is reasonable for the non-solicitation clause to extend to affiliated entities. Second, the Court does not agree that a reasonable non-solicitation clause must be limited to customers with whom Jacobi interacted as an Acrisure employee. Jacobi may have acquired confidential information about Acrisure's operations that does not pertain to any specific client, but that can still be used to obtain an unfair advantage.

As to the geographic scope, while the non-solicitation clause does not specify any geographic boundaries, it is in practice limited in geographic scope because it applies only to former Acrisure customers. This restriction ensures that the clause will not apply beyond the geographic scope of Acrisure's own business. *See Best Team Ever, Inc. v. Prentice*, No. 319026, 2015 WL 3874477, at *4 (Mich. Ct. App. June 23, 2015) (finding geographic scope reasonable because it covered only the areas where the employer conducted business); *cf. Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 847 (E.D. Mich. 1994) (unlimited geographic restriction was reasonable where employer conducted international business). And the lack of a geographic limitation does not unduly limit Jacobi's ability to work in the insurance industry because he may do so as long as he does not solicit Acrisure's clients. *Cf. Total Quality*, 958 N.W.2d at 306 ("The scope of the activity prohibited is reasonable and allows defendants to compete with [the plaintiff]

as long as they do not solicit [the plaintiff]'s customers, employees, and business relationships."); *St. Clair Med.*, 715 N.W.2d at 921 (finding geographic scope reasonable because it did not prevent defendant from obtaining employment). Finally, this Court agrees with Michigan courts that have found three years to be a reasonable duration for a restrictive covenant. *See, e.g.*, *Gen. Med. of Ill. Physicians, PC v. Ampadu*, No. 361260, 2023 WL 7457468, at *22 (Mich. Ct. App. Nov. 9, 2023).

The cases cited by Jacobi are not to the contrary. In *Whirlpool Corp. v. Burns*, the court held that a non-compete provision was unreasonably broad because "it would essentially bar [the employee] from selling home appliances anywhere in the world for a one year period, even if such sales did not involve any of the same customers he served during his tenure at [his former employer] or the use of confidential information obtained from [his former employer]." 457 F. Supp. 2d 806, 813 (W.D. Mich. 2006). But the non-solicitation provision here is narrower than that in *Whirlpool* because it only applies to former customers of Acrisure, not every entity in the insurance brokerage business. In *Mapal, Inc. v. Atarsia*, the court held that a non-compete provision was unreasonable because it "preclude[d] [the employee] from, on a worldwide basis, joining a 'direct or indirect' competitor in any capacity, even as to industries with which he had no involvement while at [his former employer]." 147 F. Supp. 3d 670, 679 (E.D. Mich. 2015). Again, categorically barring an employee from working in an industry is quite different from preventing an employee from soliciting one's former clients.

As a final matter, Jacobi argues that Plaintiffs cannot enforce the employment contract via injunction because they come to the Court with unclean hands. "The unclean-hands doctrine precludes equitable relief . . . to parties acting with inequity or bad faith in the matter over which relief is sought." *Yopek v. Brighton Airport Ass'n, Inc.*, 997 N.W.2d 481, 490 (Mich. Ct. App. 2022); *see PCA Mins., LLC v. Merit Energy Co., LLC*, 725 F. App'x 342, 346 (6th Cir. 2018).

Jacobi contends that Acrisure has unclean hands due to its conduct surrounding the above-mentioned California statute that limits parties' ability to agree to forum selection clauses. *See* Cal. Lab. Code § 925(e). Specifically, Jacobi argues that this Court is only able to hear this case because § 925(e) does not apply, and § 925(e) does not apply solely due to its exception for contracts where the employee had individual legal representation. And Jacobi asserts that he was purportedly represented by counsel when he signed his contract, but Acrisure secretly placed limits on his counsel's ability to act against Acrisure's interests. Whatever the merits of this argument, it has no bearing here because the Court did not rely on the individual representation exception in determining that § 925(e) does not apply—rather, as explained above, § 925(e) is inapplicable due to Michigan's choice-of-law rules. Since Acrisure's alleged misconduct has no practical relevance to the case, it cannot support a finding of unclean hands.

In sum, Acrisure is likely to succeed on the merits of its claim that Jacobi violated the non-solicitation provision of his employment contract.

**2. Other Preliminary Injunction Factors**

In addition to Acrisure's likelihood of success on the merits of its claims, the Court must also consider the risk of irreparable harm, the balance of the equities, and the public interest before issuing a preliminary injunction. For the reasons below, these factors support the issuance of an injunction.

*Irreparable harm.* It is Plaintiffs' burden to show that without a preliminary injunction, they "will likely suffer harm before final judgment that cannot be remedied at final judgment." *Fischer v. Thomas*, 78 F.4th 864, 868 (6th Cir. 2023) (emphasis removed). "[A] plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). But courts often find that violations of restrictive covenants cause irreparable harm because a loss of fair competition and customer goodwill are difficult to quantify

monetarily. *See, e.g.*, *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 530 (6th Cir. 2017); *York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 308 (6th Cir. 2019); *Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 951–52 (E.D. Mich. 2008).

Jacobi contends that his employment contract contains a liquidated damages clause that precludes a finding that Acrisure would suffer irreparable harm absent an injunction. The contract provides:

> In addition to any other remedies available to Employer, the parties agree that if Employee actually writes business for any Employer customer in a manner that violates this Agreement, then whether or not Employer has obtained or has attempted to obtain equitable relief, Employer, at its election, may deem that Employee has elected to purchase from Employer the business with respect to such customer, and upon demand, *Employee shall pay to Employer in cash an amount equal to two (2) times the customer's first year's sales commission* payable with respect to any business customer purchases in connection with the business services Employee renders. Due to the many ways Employee could violate covenants contained in this Agreement without writing business for any Employer customer, *it is the intent of the parties that this is not a liquidated damages clause that may preclude equitable relief.* The parties intend this provision to be a reasonable estimation of damages that Employer may use only if Employee actually writes business for an Employer customer. All remedies are cumulative and may be exercised singularly or concurrently and the exercise of any one shall not be deemed a waiver of any other, including rights Employer and/or its Affiliates may have against Employee.

(Employment Agreement ¶ 14.b (emphases added).) Jacobi argues that because the contract provides an explicit measure of damages for his alleged solicitation of Acrisure's customers, any harm caused to Acrisure by a breach would be redressable through money damages. Although Jacobi acknowledges that the clause clarifies it is not meant to preclude equitable relief, he contends that that clarification is meant to preserve the possibility of injunctive relief when an employee violates the restrictive covenants in a way that does *not* involve soliciting Acrisure's customers. Hence the reference to "the many ways Employee could violate covenants contained in this Agreement without writing business for any Employer customer." (*Id.*)

But this damages provision does not preclude a finding of irreparable harm. The provision specifies a monetary cost for a particular harm—an Acrisure client leaving for another insurance broker—but a violation of the non-solicitation provision may cause harm even when an employee does not write business for any Acrisure customer. An attempt to convince such a customer to leave Acrisure may cause unquantifiable harms, such as a loss of goodwill. The Court does not read the employment contract as foreclosing the possibility of injunctive relief in such a situation.

In sum, the Court finds that Acrisure has established a likelihood of irreparable harm.

*Balance of the equities.* To determine whether the balance of the equities supports an injunction, courts compare "the harms the plaintiff might suffer to the harms the defendant might suffer, and then ask where the greatest harm would fall." *EOG Resources*, 134 F.4th at 885–86. If no injunction issues, Jacobi may continue to take clients from Acrisure and lessen its goodwill with its customers. On the other hand, if Jacobi is enjoined from violating the non-solicitation clause, he will be free to continue working in the industry—just not with Acrisure's clients. Thus, the balance of the equities tilts in favor of issuing the injunction.

*Public interest.* As the Sixth Circuit recognized in a similar case, "[n]o important public policies readily appear to be implicated by the issuance of the preliminary injunction . . . other than the general public interest in the enforcement of voluntarily assumed contract obligations." *Certified Restoration*, 511 F.3d at 551. Thus, the public interest factor supports the issuance of an injunction.

* * *

In short, Plaintiffs have established that an injunction is warranted to prevent Jacobi from violating the non-solicitation provision of his employment contract.

**3. Scope of Injunction**

Jacobi argues that Plaintiffs' requested injunction is too broad because it merely directs him to follow the terms of the contractual provisions at issue. For the sake of clarity, the Court will issue an injunction that bars Jacobi from persuading or attempting to persuade entities who are clients of Acrisure, Acrisure affiliates, or SWDS as of the date of Jacobi's contact with them, or that were a client of those entities on June 23, 2026, to reduce or eliminate their business with Acrisure or to transfer their business from Acrisure to EPIC or any other entity that employs Jacobi. The injunction will last until June 23, 2029—three years from the date of separation—unless the Court orders otherwise.

Jacobi also objects to Plaintiffs' request that the Court include in its injunction a statement that it binds "all persons in active concert or participation with [Jacobi] who receive actual notice of this order." (Proposed Order 3, ECF No. 11-1.) The Court notes that the requested language merely restates a principle that applies to all injunctions, and will operate regardless of the order's specific language. *See* Fed. R. Civ. P. 65(d)(2)(C). To ensure that all non-parties to this case are on notice of this principle, the Court will include it in the injunction.

**4. Bond**

Finally, Jacobi argues that if the Court issues a preliminary injunction, it should require Acrisure to post a bond. The Federal Rules of Civil Procedure provide that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Although this language "appears to be mandatory," the Sixth Circuit has held "that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995); *see Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life*

*Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013). "The amount of required bond ordinarily depends on the gravity of the potential harm to the enjoined party[.]" *Doe v. Edlow*, No. 2:26-cv-494, 2026 WL 1945085, at *34 (S.D. Ohio July 6, 2026).

Plaintiffs do not dispute that an injunction enforcing the non-solicitation clause would potentially cause Jacobi significant monetary harm by limiting the clients he may work with at his new job. Rather, Plaintiffs argue that no bond is necessary because Jacobi "makes no allegation that Acrisure poses a collection risk." *Acrisure of California, LLC v. Papazyan*, No. 1:26-cv-1213, 2026 WL 1584857, at *12 (W.D. Mich. May 26, 2026). But this reasoning is flawed. The purpose of an injunction bond is to ensure that if the Court's injunction turns out to have been issued in error, the enjoined party will be able to recover the damage caused to it by the injunction. The focus on whether Acrisure is a collection risk appears to rest on the assumption that if no bond is posted, Jacobi can still recover in the case of a wrongfully issued injunction—the only issue would be whether such a recovery could be collected from Plaintiffs. However, this assumption is mistaken: if no bond is posted, and the injunction is later vacated, Jacobi has no mechanism to recover for any harm the injunction caused. *See W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 770 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."); *In re Ladner*, 799 F.2d 1023, 1026 (5th Cir. 1986).[9] Thus, the fact that Acrisure is not a collection risk is not sufficient to prevent the imposition of a bond.

---

[9] There are some potential exceptions to this rule: "[f]or example, even if no bond has been posted, plaintiff still may be liable for any unjust enrichment that has resulted during the period the injunction was in effect." *See* 11D Wright & Miller's Federal Practice & Procedure § 2973 (3th ed. 2026).

The Court finds that a bond is warranted in this case. As to the security to be posted, although the client relationships potentially impacted by the injunction likely involve large sums of money, an injunction will not completely foreclose Jacobi's ability to work in the insurance business—it will only prevent him from acquiring a specific set of clients. It is also not clear to what degree Jacobi's current compensation depends on the specific clients he acquires. In order to cover the possible harm that could be caused to Jacobi, the Court will require a bond of $25,000.

## IV. CONCLUSION

For the reasons explained above, the Court will grant Plaintiffs' motion for a preliminary injunction and deny Jacobi's motion to dismiss. An order will enter in accordance with this Opinion.

Dated: August 27, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE